IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VESTA E. WOLARIDGE                                                                        PLAINTIFF

        v.                    Civil No. 2:14-cv-2074-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Vesta Wolaridge, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff filed her application for DIB on April 18, 2011, alleging an onset date of March 2, 2011, due to depression, asthma with a history of sarcoidosis, high blood pressure, carpal tunnel, degenerative disk disease ("DDD") in the back and neck, and arthritis in the neck.  Tr. 9, 111-112, 137.  The Commissioner denied Plaintiff's applications initially and on reconsideration.  Tr. 50-55.  An Administrative Law Judge ("ALJ") held an administrative hearing on January 30, 2013. Tr. 21-49.  The Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 43 years old and possessed a high school education. Tr. 24.  Plaintiff testified that she went into the Air Force for six years following her graduation from high school.  Tr. 24.  Further, she had past relevant work ("PRW") experience as a janitor and a label machine operator.  Tr. 24, 28, 126, 174.

On May 16, 2013, the ALJ found that Plaintiff's early mild DDD in the cervical and lumbar spine with associated pain, obesity, and asthma were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work. Tr. 13. The ALJ then found Plaintiff could perform her PRW as a label machine operator. Tr. 14.

The Appeals Council denied Plaintiff's request for review on January 29, 2014. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 11, 12.

## II.     **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving their disability by establishing a physical or mental disability that has lasted at least one year and that prevents them from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that their disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520(a)(4)(v).

### III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ failed to fully and fairly develop the record; 2) The ALJ erred at step two of his analysis; 3) The ALJ failed to properly evaluate the Plaintiff's subjective complaints and apply the *Polaski* factors; and, 4) The ALJ erred in his RFC determination.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**1. Develop the Record:**

Plaintiff argues that the ALJ breached his duty to develop the record by failing to obtain an RFC assessment from a treating or examining source.  The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  He is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.  *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).  Thus, this court should only remand for further development of the record when the evidence does not provide an adequate basis for determining the merits of a disability claim.  *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

Records predating the relevant time period establish Plaintiff's history of back and neck pain, plantar fasciitis, carpal tunnel syndrome ("CTS"), high blood pressure, and depression.  However, she continued to work at the Gerber factory for 16 years, in spite of her CTS and plantar fasciitis.  It was not until her herniated disks became symptomatic in March 2011, that she stopped working.

The medical evidence relevant to the time period in question consists of only five treatment records and two consultative examinations.  Tr. 196-199, 222-223, 245-249, 311, 316-317.  In March 2011, Plaintiff sought out treatment with Dr. Thuylinh Pham due to continued back and neck pain, depression, and hypertension.  Tr. 223.  She reported worsening pain in her back and

4

neck with a history of DDD, stating she was unable to do "much work due to pain." However, she also reported improvement in her depression with the addition of Cymbalta. Dr. Pham's examination revealed muscle spasms in her neck and spine and elevated blood pressure. Accordingly, he prescribed Hydrocodone and advised her to remain off work until March 20, 2011. Dr. Pham also ordered an MRI of her cervical and lumbar spine, which revealed the following: disk degeneration at the L4-5 and L5-S1 levels; mild central and left posterolateral disk protrusion and spurring at the L4-5 level resulting in mild left lateral recess stenosis; minimal broad disk bulging at the L5-S1 level; a small cervical cord syrinx most evident posterior to the C5 level; broad dorsal spondylitic ridging with mild to moderate disk protrusion at the C4-5 level eccentrically worse toward the right; mild canal stenosis at the C4-5 level; mild to moderate right foraminal stenosis; and, a milder degree of broad dorsal spondylitic ridging with disk protrusion at the C5-6 level. Tr. 196-199, 214-217.

On March 28, 2011, Plaintiff returned to Dr. Pham's office. Tr. 222. Her blood pressure showed slight improvement on Lotril and Tekturna, but her back pain remained. An examination revealed tenderness to palpation of the neck and spine. Dr. Pham noted that her cervical MRI had shown both protrusion and canal stenosis. He then prescribed Flexeril and Hydrocodone.

On April 11, 2011, Plaintiff consulted with neurosurgeon, Dr. Joseph Queeney. Tr. 302-303. Dr. Pham had referred Plaintiff for a surgical evaluation of her right sided neck pain as well as right shoulder pain. On examination, Dr. Pham noted decreased sensation to pin prick over the right shoulder. Valsava maneuvers also reproduced her neck and arm pain. After diagnosing, DDD of the cervical spine, cervical brachial radialgia, and a herniated nucleus pulposus at the C4-5 level, he recommended she exhaust conservative treatment measures to include physical therapy

5

with traction. Further, he noted that non-steroidal anti-inflammatories were not an option, given their impact on her blood pressure.

On November 25, 2011, Plaintiff underwent an audiology consult with audiologist, Debra Gilstrap. Tr. 308-310, 316-317. Testing revealed bilateral sensorineural hearing loss. She indicated the Plaintiff was a good candidate for hearing aids in both ears.

On April 4, 2012, Dr. Chester Carlson conducted a general physical examination of the Plaintiff at the Agency's request. Tr. 245-249. Plaintiff reported a history of sarcoidosis for which she had been in remission since 1992; history of asthma dating back to 1992; history of depression since 1998 exacerbated by her daughter's death seven months prior; high blood pressure; distant history of carpal tunnel syndrome related to 17 years of work in a factory; back and neck problems related to arthritis and bulging disks; and, obesity. Dr. Carlson noted her to be tearful, crying as she entered his office. However, a physical examination revealed no abnormalities. She exhibited a normal range of motion in all joints, showed no sign of muscle weakness or atrophy, and had no evident muscle spasms. Dr. Carlson diagnosed her with severe depression since her daughter's death, and found her to be moderately limited by her depression. But, he found no significant physical limitations.

On May 3, 2012, Plaintiff submitted to a consultative mental diagnostic evaluation with Dr. Terry Efird. Tr. 260-264. Plaintiff denied a history of inpatient psychiatric treatment, reporting some outpatient family counseling many years prior. She reported being prescribed Cymbalta through the Veteran's Administration ("VA") Clinic, and indicated that it had been beneficial until her daughter's death. Plaintiff also disclosed a 10 percent service connected disability due to sarcoidosis and asthma. Dr. Efird documented a sad/depressed mood, somewhat sporadically distressed affect with tearfulness, speech within reasonable limits, normal thoughts, no

6

hallucinations, and no homicidal or suicidal ideation. Plaintiff endorsed significant symptom based criteria for a diagnosis of moderate major depressive disorder and anxiety disorder not otherwise specified. She also reported several features typically associated with post traumatic stress disorder. As such, Dr. Efird assessed her with a global assessment of functioning ("GAF") score of 55-65.

After acknowledging no significant limitations in the Plaintiff's ability to perform various activities of daily living, Dr. Efird opined regarding her ability to perform several work-related activities. He indicated that she communicated in a socially adequate yet tearful, reasonably intelligible, and effective manner. In his opinion, she retained the capacity to perform the basic cognitive tasks required for basic work-like activities. Further, she appeared able to track and respond adequately for the purposes of the evaluation and generally completed most tasks without any remarkable problems with persistence. Dr. Efird also found her able to complete tasks within an adequate time frame. With no clear evidence of malingering, he believed the evaluation represented "a reasonable estimate of [her] current functioning." Tr. 263.

The record also contains an RFC assessment from a non-examining physician and a non-examining psychologist. In April 2011, Plaintiff Dr. William Payne, reviewing only the Plaintiff's medical records, completed an RFC assessment. Tr. 252-259. He found the Plaintiff capable of performing light work. Similarly, Dr. Kevin Santulli completed a mental RFC assessment in May 2012. Tr. 267-284. After reviewing her records, he concluded she would have moderate limitations in the following areas: ability to maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest

7

periods, respond appropriately to changes in work setting, set realistic goals, and make plans independently of others.

Therefore, considering the entire record in this case, the undersigned concludes the ALJ was not required to develop the record because it was "reasonably complete," and contained sufficient evidence from which the ALJ could make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Plaintiff's contention that the ALJ should have recontacted her treating physicians and/or consultative examiners to obtain an RFC assessment is without merit. An RFC assessment from a treating physician, although helpful, is not required. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

Plaintiff also seems to argue that her treatment records for the VA are not part of the record, and the ALJ's failure to obtain these records is error. At the hearing, the Plaintiff reported receiving treatment from the VA for her depression and back pain, and the record contains VA treatment notes dated between September and November 2011. Tr. 44,304-317. We can find no evidence to suggest that additional medical evidence exists. Accordingly, we find the ALJ did not breach his duty to develop the record.

Further, Plaintiff's argument that the ALJ should have ordered pulmonary function tests and additional examinations to explore her hearing deficits is without merit. Plaintiff did not seek out consistent medical attention for these impairments during the relevant time period. It appears she was last prescribed medication to treat her asthma in June 2010. Tr. 229. The fact that she

8

sought out no further treatment and voiced no further complaints to Dr. Pham is inconsistent with her contention that the record requires further development. Further, the mere suggestion by Ms. Gilstrap that "this degree of hearing loss can cause significant communication problems" is not sufficient to require further development of the record. The remainder of the evidence shows that the Plaintiff had no significant communication problems related to her hearing or any other impairment. Therefore, further development was not required.

### 2. **Step Two Analysis:**

Plaintiff also asserts that the ALJ erred by failing to properly evaluate the severity of her anxiety disorder, hearing loss, and pulmonary impairments. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). However, in order for Plaintiff to be entitled to a remand, the Plaintiff must not only prove that the ALJ should have considered other impairments as severe, rather she must also prove that the ALJ's failure to consider those impairments as severe caused harm. *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009). In other words, she must show the ALJ's failure to include the additional impairments affected the disability determination. *Id*.

At the outset, we note the Plaintiff did not allege anxiety as a disabling impairment in her application materials or during the administrative hearing. Tr. 21-49, 137. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (ALJ properly found no severe mental impairments when claimant did not allege mental impairment in her disability application). Furthermore, she admitted that she was not seeking treatment from a psychiatrist or psychologist for any mental related symptoms. Tr. 260. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (the ALJ correctly found that claimant did not have a severe mental impairment when the claimant had never

had any formal treatment by a psychiatrist, psychologist, or other mental health professional over any long-term basis). She also denied a history of hospitalization for her alleged symptoms. A consultative examination revealed she could communicate and interact in a socially adequate, intelligible, and effective manner; track and respond to the examiner appropriately; perform basic cognitive tasks required for basic work-like activities; complete most tasks without any remarkable problems with persistence; and finish basic work-like tasks within an acceptable time frame. Tr. 262. Thus, it does not appear that the Plaintiff's anxiety affected her ability to perform work-related tasks.

Plaintiff points out that she had a Global Assessment of Functioning (GAF) score of 55-65, arguing the ALJ was required to discuss this GAF score prior to finding she had no severe mental impairments. However, the United States Court of Appeals for the Eighth Circuit has held that a GAF score within this range is not proof of a disabling mental impairment. *See England v. Astrue*, 490 F.3d 1017, 1022-23 (8th Cir. 2007) (GAF score of 50 not disabling); *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (GAF score of 51-60 not disabling). In fact, the Diagnostic and Statistical Manual of Mental Disorders equates this GAF score with only mild to moderate symptoms or difficulties in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). This, coupled with the fact that Plaintiff was not seeking out treatment for her condition leads the undersigned to the same conclusion as was formed by the ALJ. Thus, substantial evidence supports the ALJ's conclusion the Plaintiff's anxiety was not a severe impairment.

Similarly, we can find no evidence during the relevant time period to suggest that the Plaintiff's alleged sarcoidosis or asthma was severe. She sought out no treatment for these impairments, was prescribed no medication to treat these impairments, and voiced no complaints

to her treating doctors. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Although she was treated for asthma prior to her alleged onset date, records indicate that her condition was responsive to treatment. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000) (alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record). Further, none of the treating or examining physicians documented breathing difficulties or limitations associated with her alleged lung impairments. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job). And, a mere diagnosis alone is insufficient without evidence of functional limitations. .*See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Plaintiff does claim a 10 percent service connected VA rating due to her pulmonary issues. Unfortunately, a review of the evidence shows only gynecological and hearing exams conducted by doctors at the VA. There is nothing in the record indicating that such a rating was ever assigned. However, even if it were contained in the record, the ALJ is not bound by VA ratings because the disability standards utilized by two agencies are different. *See Johnson v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996) (disability determination by VA not binding on ALJ); 20 §C.F.R. 404.1504.

While the record does reveal that Plaintiff suffered from bilateral sensorineural hearing loss and was a candidate for hearing aids in both ears, there is nothing in the record to suggest that this actually interfered with her ability to perform work-related tasks. Treatment notes are devoid of complaints related to hearing deficits.[1] Likewise, at the administrative hearing, there is no

---

[1] We do note that the Plaintiff reported decreased hearing to Dr. Carlson. Tr. 245. He also noted that she "has had hearing aides." However, he made no mention of hearing difficulties or limitations when he examined her. And, he failed to diagnose a hearing impairment.

11

indication that the Plaintiff was unable to hear and understand the ALJ or her attorney. *See Salts v. Sullivan*, 958 F.2d 840, 844(8th Cir. 1992) (the ALJ did not err by failing to mention claimant's alleged hearing loss and breathing problem in his opinion because the evidence supports the conclusion that these problems were not severe). Instead, records reveal that she could hear a normal conversation without difficulty, had normal speech and intact hearing to spoken word, exhibited excellent word recognition, and could communicate in an intelligible and effective manner. Tr. 247, 262, 303, 309. And, at the hearing, Plaintiff testified that she was fitted for hearing aids in November and December 2011, and that they had been helpful. Tr. 44. Accordingly, we find substantial evidence supports the ALJ's conclusion that the Plaintiff's hearing loss is a non-severe impairment. *See Trenary*, 898 F.2d at 1364.

    **3.**    **<u>Subjective Complaints</u>:**

Plaintiff also alleges that the ALJ failed to properly evaluate her subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of her pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of her medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, he may disbelieve subjective reports because of inherent inconsistencies or other circumstances. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, in addition to the absence of objective medical evidence, the ALJ considered other relevant factors. Although he did not explicitly discuss each factor in a methodical fashion, he acknowledged and considered those factors before discounting her subjective complaints.[2] *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir.1996). An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.'" *Id.* (quoting *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987)).

As mentioned above, the Plaintiff failed to seek out consistent treatment for any of her alleged impairments. And, although she contends that financial hardship prevented her from doing so, we can find no evidence to indicate that she was ever denied medical treatment. Further, the record is void of evidence indicating that she sought out treatment from an indigent or low cost medical facility. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). As such, we do not find that her financial status excuses her failure to obtain consistent treatment.

Physical exams and objective tests conducted during the relevant time period showed minimal abnormalities. Tenderness to the back and neck, decreased sensation to pin prick over the right shoulder, pain with Valsalva maneuvers, and mild abnormalities on MRI are the only notations made. A consultative exam with Dr. Lawrence showed no range of motion deficits, weakness, atrophy, or spasms. Tr. 245-249. Moreover, he found "no significant physical limitations." Further, records reveal no reported medication side effects.

Additionally, her treatment was conservative in nature, mainly consisting of muscle relaxers and pain medication. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)

---

[2] We do note that the ALJ's opinion is not necessarily easy to follow. The ALJ did not address the *Polaski* factors in one section, rather scattered them over at least two sections. However, when taken as a whole, we find that the ALJ adequately set forth the reasons for his credibility determination.

(conservative treatment belies claims of disability). In fact, neurosurgeon, Dr. Queeney noted she had not exhausted all of her conservative treatment options. Thus, he recommended physical therapy with traction.

As for her alleged mental impairments, we do note that Dr. Efird diagnosed her with both depression and anxiety. Records do indicate she obtained antidepressants from her treating doctor. And, in late 2011, her depression was aggravated by the death of her 20 year old daughter. It appears that Duloxetine was added in August 2011, by Dr. Amanda Chapman at the VA, during a gynecological exam. However, she sought out no further treatment for her depression, suggesting that the medication was effective in targeting her symptoms. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Moreover, in spite of her alleged disabling depression and anxiety, the Plaintiff failed to seek out formal mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental Impairment). And, Dr. Efird assessed her with a GAF score indicative of only mild to moderate limitations.

While we do note that the Plaintiff failed to complete the pain report and adult function report as requested by the Agency, the record does contain some evidence concerning her activities of daily living. Tr. 152-161. She testified that she prepares family meals once or twice per week, cleans house when she feels like it, helps with the laundry, cares for her dog, reads, and watches television. Tr. 39-41. During her evaluation with Dr. Efird, she also endorsed the ability to drive unfamiliar routes, shop independently, handle personal finances adequately, and perform most activities of daily living adequately. Plaintiff also reported spending time on social media sites

14

and talking with friends and relatives on the telephone. Tr. 260-264. Clearly, these are not the activities one would expect of an individual who is as limited as the Plaintiff has alleged. *See, e.g.*, *Edwards*, 314 F.3d at 966 (finding that the claimant's shopping, driving short distances, attending church, and visiting relatives were inconsistent with suffering disabling pain); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's dressing herself, bathing herself, cooking, and shopping was inconsistent with disabling pain).

Accordingly, it is the opinion of the undersigned that the ALJ's determination that the Plaintiff's subjective complaints were not fully credible is supported by substantial evidence.

### 4. **RFC Determination:**

In her final argument, Plaintiff attacks the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. Disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff insists that the RFC determination is flawed because it contains no mental, postural, or sensory restrictions. After reviewing the entire medical record in this case, the

undersigned finds substantial evidence supporting the ALJ's RFC assessment. As previously stated, the Plaintiff's failure to seek out consistent treatment for her impairments, failure to seek out formal mental health treatment, lack of objective evidence to bolster her subjective complaints, lack of limitations imposed by treating physicians, and her reported daily activities undermine her allegations of disability. Further, the mental and physical consultative examinations, when considered in conjunction with the Plaintiff's medical records and the RFC assessments completed by the non-examining consultants provide a substantial basis for the ALJ's decision.

Although the Plaintiff also appears to question the ALJ's consideration of her impairments in combination, we find that the ALJ properly considered all of the evidence of record. The mere fact that he did not enumerate specific limitations resulting from her obesity does not mean he did not consider it. To the contrary, the ALJ found the Plaintiff's obesity to be severe. However, there is no evidence in the record to indicate that her obesity limited her to less than light level work. Thus, we find the ALJ's reference to her obesity to be sufficient. *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal)).

**V.      Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 6th day of July, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE